Good morning, my name is Martin Zeringer and I represent the petitioner's family, Salazar. I also am the attorney who called in that there might be traffic problems because of the fog in an accident, and I'm having a Girozzano moment in that the justices are still on the bench as I arrived. This matter, Your Honor, I feel the court visited much of it about two cases ago. This is a matter of the family Salazar not appearing for a hearing when the hearing had been rescheduled. And therein lies the difference from some of the cases cited by the government in its brief and that I'd like to distinguish to the court. Well, how about starting with the question I just asked a minute ago with Conn? Because there's no question that your client got the notice of the change, and the notice says, just as plain as anything, that it's rescheduled to JAN 30, and you compare JAN to the first notice, which said JUNE, and they're visually different, not that it matters under Conn. So my question is, given Conn, what kind of an argument do you really have left? You got the notice. No, I agree. There is no question they got the notice. In this situation, the notice they received from the immigration court is the only contact that they would have to the immigration court at that time about the rescheduling. In that notice, and as the court is aware, my client's allegation is they misread that to be JUNE. Well, yeah, but it's even worse than Conn, because he said, I don't speak the language. And we say, well, you got the notice. In this situation, if my clients received the notice, and let me take a step back and state that my clients who were representing themselves had participated as actively as they could prior to this notice. They'd appeared timely. There appeared to be no problems with travel, no problems with appearing on time. They received this notice. It seems to some extent to stretch credulity to say, all right, I received this notice. To them, it appeared that this notice said JUNE. But let me compare it to this first notice to see if the wording is exactly the same. Well, okay, I guess my real point is if there's no obligation to provide a notice in a language that the recipient understands, that is, notice in English is sufficient, then how can it be an excuse that's beyond the alien's control that he can't understand the English? My answer to that would be where Singh versus INS suggests that each matter has to be taken by the particularity of the circumstances, that this body is entitled to look at the individual, in this case, Werner B. Salazar, to see that he has essentially a third-grade education, a very limited education, even ignoring the fact that there's no obligation to put the matter into the language of the respondent or the language that the respondent is most familiar with. The fact that he has a third-grade education, that it seems similar, that he has not had a court instruct him directly when his next appearance is to find that there is an exceptional circumstance because you're entitled to look at each individual case with particularity. And perhaps in another context, that wouldn't be sufficient. Well, but what is it that's out of his control? I mean, that's what Singh is saying, is you look at the circumstances and ask whether it's outside the alien's control. Well, what would be out of the alien's control in this situation is he doesn't have, for lack of a better phrase, the safety net of the court environment where the immigration judge at the conclusion of proceedings, when the immigration judge prepares the notice for the next hearing, would instruct the client that there is an interpreter in, in this language that they're most familiar with, giving them the information about when the next court hearing is. What happens then when the immigration court elects, for whatever reason, to continue a matter and send a notice by mail is that safety net disappears and now the respondent alien, his ability to understand what is going to happen next is entirely dependent upon that moment when he opens up the mail and looks at it and interprets it whatever way he's going to interpret it. And I think in this situation. But what law gives you, you know, what law says that that's an exceptional circumstance? I'm sorry, Your Honor? What's the closest case you can come up with that says that's an exceptional circumstance? It's unfortunate, but what makes it an exceptional circumstance? What makes it the exceptional circumstance in this case is the fact that, essentially, the notification occurs in a household setting, I believe my client's lived in Riverside, in the course of any other day, without the gravitas of a court setting, without the impression upon the respondent alien of a juror sitting on the bench or attorneys providing him information. Counsel, let me ask the kind of tough question. In looking at the record, it looks like there's no available relief for these people. They couldn't get cancellation because they're all Mexicans. There's not a U.S. citizen who could suffer hardship. Is that accurate? Your Honor, to the point that the family Salazar appeared to be all Mexican nationals, that is true. I think what happened in this situation was the in absentia order was granted before the family Salazar had, I almost believe, before they had admitted or denied the allegations, but certainly before they had filed any petition for cancellation. I think in their motion to reopen, there's a reference that if the motion is granted, they'll be filing a petition for cancellation. There's some issue from looking at the different notices to appear as to when the date of entry is, but I did notice looking at the certified appellate record, administrative record, that when the father Salazar had filed the petition for political asylum, he listed being in the United States from 1990. So he meets the 10-year criteria as a non-permanent resident. I cannot tell you whether or not the family Salazar would have had a qualifying relative, be that a parent who was a U.S. citizen. But from the number of the respondents here, the court's correct. I thank you, Ron. And please, the court. Michael Schoen on behalf of the United States. I have two points to make this morning, the first being that the agency acted within its discretion when it decided not to reopen petitioners' hearings, and the second that the petitioners were afforded due process in their hearing. But I think I'd like to start by addressing some of the panel's questions because I think they're pertinent. First of all, as Judge Reimer has noted, the CON decision essentially stands for the position that when the notice requirements of 8 U.S.C. Section 1229A are met, due process is afforded. And there's no question here that petitioners received notice and that that notice complied with the requirements of the statute. The second point, and I'll move on to my argument, being that it's not clear from the record that belief by way of cancellation of removal or otherwise is available to petitioners. There is an asylum application in the record, but I note that Mr. Salazar's last date of entry to the country is noted as June of 1996. And the proceedings were initiated in 2002. So we don't have the 10-year time period here. There seems to be some basis for confusion on the part of the immigrant. As I note, January in Spanish is E-N-E-R-O. And for June, it's J-U-N-O. So that their first hearing was in June. They just kind of probably reasonably thought that the hearing would be June. It's kind of an unusual circumstance. So there's some justification for thinking that they really thought it would be June and reason for their confusion. Well, respectfully, Your Honor, I would respond in two ways. The first being that there's no requirement that the notice be provided, especially written notice. I'm sorry. There's no requirement that written notice be provided in petitioners' native language. In fact, the ---- Well, I understand that. It's just a question of why they were confused. Sure. And I would note that the Spanish word for January is inero, which starts with an E. June is junio, which is J-U-N-I-O. And there simply isn't a Spanish month that starts with the letters J-A-N. And phonetically, it wouldn't sound like June. It would sound more like Han or Yan. And so even if it were reasonable for petitioners to misunderstand the date, it's not grounds for reopening the petition. As we've noted earlier this morning, the standard for reopening an immigration proceeding that was held in absentia, especially when the petitioners received notice, is exceptional circumstances, which the statute defines to be not less compelling than the death or serious injury of a petitioner or a close family member. And this Court's decisions have made it clear that mistakes and misunderstandings are not exceptional circumstances. You know, I would note that the case of Valencia Fragoso involved a petitioner who misunderstood the time on her hearing notice and then lost the notice and failed to appear, and the Court held those were not exceptional circumstances. The other case that we've talked about this morning, Sharma, involved traffic delays. Those were not exceptional circumstances. Another case is Singh Vatal, where a petitioner followed advice of an immigration consultant  And those, too, were held to not be exceptional circumstances. In the case at hand, you have a petitioner misunderstanding the date on their hearing. They concede it's their own misunderstanding. And reasonable or not, that's not an exceptional circumstance, which would provide grounds for removal. It's moving on to due process. It's the United States' position that due process has not been fully briefed below and so is waived. But nonetheless, generally speaking, due process is afforded where a person is provided notice of a hearing and afforded an opportunity to attend that hearing, and that's exactly what happened here. The petitioners received the notice in English with a common English abbreviation for the date and missed and failed to attend. The due process was afforded because they had the opportunity to attend that proceeding and failed to do so. Is there anything in the regulations which indicates that the month should be spelled out? Your Honor, there's nothing in the regulations that indicates that the month should be spelled out, no. But instead, the regulations require certain information to be contained in the notice, including when the hearing will take place and the consequences of failing to appear, which I would also note that petitioners had notice of. They had oral notice of the consequences of failing to appear from attending their first hearing. They received subsequent written notice on two occasions of consequences of failing to appear, and so were fully informed of what would occur and the gravity of missing the hearing. And if there are no further questions, I think I'd end by saying that the petition should be denied because the agency clearly acted within their discretion and due process was afforded. Thank you, counsel. Your Honor, I'll make a reference to a case that counsel referenced in our distinguisher, Valencia Forgoso, which was a Ninth Circuit case. In that situation, Ms. Valencia Forgoso lost her notice and then believed it to be 1 o'clock when it was actually a morning appearance. Here, the clients didn't lose their notice. Valencia Forgoso, having lost her notice, realizing she didn't have the one document she needed to confirm that, had other remedies available to her, and as counsel cites in his brief on Uri's Tegway v. Gonzalez, which is a Seventh Circuit case, there is a host of things that a respondent alien could do if they have, as Valencia Forgoso, lost the notice. Here, my clients didn't lose the notice at all. My clients received the notice, they saw the abbreviation, and counsel puts in his brief that abbreviations is a common practice. Again, there is no reference in the code that it needs to be abbreviations. It cannot be just that it's a common practice. It would seem that where you have different languages and respondent aliens who come from different lands, that putting the month and spelling it out fully would be a more... The first notice that they were sent had October's OCT. That's right. They responded. But I would, without presenting myself as an expert in Spanish language, I would think that Octobre in Spanish and October in English would be... Well, but I mean, the point is, I mean, if I heard you right, you're just making the pitch that there should be no abbreviations. That would... And I mean, you're not saying there should be no abbreviations of months that might be confusing. I mean, here they got a notice that said it was abbreviated, and they managed to... If I had input with service, I would suggest that the notices should all not be abbreviated. Okay. Thank you, counsel. Thank you, counsel. Case just argued will be submitted.
judges: B. Fletcher, Reinhardt, Rymer